Argued and submitted August 4, 2008, convictions on Counts 11 through 20 reversed; remanded for resentencing; otherwise affirmed May 20, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GREGG BRYANT RITCHIE,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0401509; A129591

208 P3d 981

Kendra M. Matthews argued the cause for appellant. With her on the briefs were Ransom Blackman LLP, and Marc C. Blackman.

Ryan P. Kahn, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Kaye E. McDonald, Senior Assistant Attorney General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant appeals a judgment of conviction on 20 counts of encouraging child sexual abuse in the second degree. ORS 163.686. In support of his first and fourth assignments of error, defendant asserts that the trial court erred by denying his motions for judgments of acquittal.[1] Defendant first argues that the state did not elicit sufficient evidence to show that defendant knowingly possessed or controlled child pornography. In support of his fourth assignment of error, defendant argues that the state did not elicit sufficient evidence to establish venue as to Counts 11 through 20. We conclude that the evidence was insufficient to establish venue as to Counts 11 through 20, but that the evidence was sufficient to support convictions on the remaining counts.

### FACTS

We state the facts in the light most favorable to the state. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). Defendant had been an elementary school teacher in Clackamas County since 1999 and a resident of Clackamas County since 2001. In September 2004, during the course of an investigation at the school by the Clackamas County Sheriff's Department, defendant consented to a forensic examination of his personal computers.

Defendant owned two personal computers at that time: a desktop computer and a laptop computer. Defendant purchased the desktop computer in the summer of 2002 and purchased the laptop computer in the first few months of 2004. Defendant almost always had his laptop computer with him. It was set up to connect automatically to the Internet and to an instant-messaging service. It was connected to the instant-messaging service approximately 80 to 90 percent of the time during evening hours.

Defendant searched on the Internet for pictures of children under the age of 18 years old. The forensic

---

[1] Defendant's second and third assignments of error assert that ORS 163.686 is constitutionally defective. Those constitutional challenges are controlled by *State v. Betnar*, 214 Or App 416, 166 P3d 554 (2007), and we affirm on those assignments of error without further discussion.

examination showed that defendant had approximately 600 pornographic images on his desktop computer and approximately 500 pornographic images on his laptop computer. At least 75 percent of those images were pornographic images of children. The forensic examination also showed that defendant had sent and received files by instant messaging on the Internet. The names of those files exchanged by instant-messaging contained terms consistent with child pornography.

For each of the 20 counts charged in this case, the state introduced a specific image file recovered from defendant's computers by the forensic examination. Each of those files contained a photograph of sexually explicit conduct involving a child. Ten of those files were recovered from the desktop computer; the other 10 were recovered from the laptop computer. The files containing each of those 20 photographs had been deleted before the investigation at the school began in September 2004.

The state's computer expert described how data from deleted files could be recovered in a forensic examination. The expert noted that, when a computer file is created, the data contained in that file is recorded at a physical location on the hard drive. A master table keeps track of that physical location so that the computer is able to locate the data for later retrieval. When a file is deleted, the master table is modified to indicate that new data may be written in that same physical location. However, data contained at that physical location will remain there until and unless new data is recorded there. Although data may remain on the hard drive for some time after a file is deleted, a computer user cannot access data associated with a deleted file without specialized data recovery software. Accordingly, a forensic examination may recover data from deleted files that a typical computer user could not access.

The parties stipulated that defendant received the photographic files associated with Counts 1 through 4 on his desktop computer from another user through an Internet-based "chat room." The state's computer expert testified that a person has to confirm the acceptance of a file sent through the Internet in that manner. After receipt, those files were

available for viewing on defendant's desktop computer. Those files were created and last accessed on that computer on July 7, 2002; the files were deleted that same day.

The parties stipulated that defendant received the photographic files associated with Counts 5 through 20 as a result of Web browsing. Each of those photographs was contained in a separate file that had been deleted from defendant's computers and that had been recovered through the forensic examination.

The state's computer expert explained how defendant's computer received those files and how those files may have been deleted. According to the expert, when a person browses the Internet and accesses a particular Web page, the computer automatically saves various files onto the hard drive as temporary Internet files. One of those files contains instructions for how the Web page should be displayed on the screen. Additional files contain each separate image that appears on that Web page.

Temporary Internet files may be deleted either intentionally by direct action of a computer user or automatically during normal operations of the computer. The state's computer expert could not ascertain whether the files associated with Counts 5 through 20 were deleted intentionally by defendant or by some automatic computer process.

The photographic files associated with Counts 5 through 10 were found on defendant's desktop computer. The forensic examination indicated that those files were created and last accessed on December 8, 2002. The state introduced an exhibit showing how those six photographs would have been displayed on two separate Web pages. Both of those pages were photo albums created on the same Web service and listed under the same username. Although it could not be determined whether either Web page was too large to fit on defendant's computer monitor, any photograph that did not fit on the monitor could be seen by scrolling on the Web page. Each photograph was displayed as a thumbnail-sized image, but each photograph could be enlarged by clicking on it. The state's computer expert testified that defendant had clicked on and enlarged the two photographs associated with Counts 8 and 9.

The photographic files associated with Counts 11 through 20 were found on defendant's laptop computer. The state's computer expert could not identify when those files were downloaded on the laptop computer. In addition, because laptop computers are mobile devices, the expert could not determine where the computer was located when those images were downloaded onto the laptop computer.

## MOTIONS FOR JUDGMENTS OF ACQUITTAL

After the state presented its case-in-chief, defendant moved for judgments of acquittal on all counts. Defendant argued that he never knowingly possessed or controlled a tangible, visual recording of any prohibited image. In addition, defendant argued that the evidence was insufficient to establish venue in Clackamas County as to Counts 11 through 20, relating to the photographic files found on defendant's laptop computer. Defendant did not challenge venue as to Counts 1 through 10. The trial court denied defendant's motions, and defendant renews his arguments on appeal.

■     We review the trial court's denial of defendant's motions for a judgment of acquittal to "determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cervantes*, 319 Or at 125.

## ENCOURAGING CHILD SEXUAL ABUSE IN THE SECOND DEGREE (COUNTS 1 THROUGH 10)

■ ■     We turn first to the sufficiency of the evidence regarding defendant's convictions for encouraging child sexual abuse in the second degree for Counts 1 through 10 relating to the image files found on defendant's desktop computer. ORS 163.686(1) provides, in part, that a person commits the crime of encouraging child abuse in the second degree if that person

"(a)(A)(i)   Knowingly possesses or controls any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child for the purpose of arousing or satisfying the sexual desires of the person or another person; * * *

"* * * and

"(B) Knows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse[.]"

In this instance, that offense has three elements: (1) that defendant knowingly possessed or controlled a prohibited visual recording; (2) that defendant did so for the purpose of sexual arousal; and (3) that defendant was aware of and consciously disregarded the fact that the creation of the image involved child abuse.

On appeal, defendant focuses on the first element, arguing that a person who views prohibited images on a computer monitor does not knowingly possess or control that image. Defendant argues that a person "controls" the prohibited visual recording only if that person "engages in a volitional act to save, download, print, or otherwise manipulate the data." Defendant further argues that having an *ability* to control a visual recording could not constitute "control" under the statute, because everyone has the ability to access every image that is publicly available on the Internet. In addition, defendant argues that the state did not prove that defendant knowingly possessed the prohibited images.

The state argues that defendant exercised control over the prohibited images. Consistently with the reasoning set forth by the Pennsylvania intermediate appellate court in *Commonwealth v. Diodoro*, 2007 Pa Super 256, 932 A2d 172, *rev allowed*, 595 Pa 537, 939 A2d 290 (2007), the state argues that a person controls an image accessed over the Internet and displayed on a computer monitor by taking affirmative steps to locate the relevant Web page, to access it, and to close it. In addition, the state argues that the ability of a computer user to download images displayed on a Web page, to copy them, to print them, or to e-mail them to others provides further evidence of control. We agree with the state that defendant knowingly controlled the prohibited visual recordings.

Those arguments frame an issue of statutory interpretation regarding the meaning of the term "control" as it is used in ORS 163.686(1)(a)(A)(i). To resolve that issue, we ascertain the legislature's intent by first considering the statutory text in its context, along with legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The state

offers some legislative history concerning the legislature's intent to criminalize behavior by consumers as well as producers of child pornography. However, because that legislative history neither confirms the seemingly plain language of the statute nor illustrates any kind of latent ambiguity in the statute, we do not assign any weight to that history. *See id.* at 172 (stating that legislative history may either "confirm seemingly plain meaning" or establish that "superficially clear language actually is not so plain at all"). As further explained below, we determine that the plain meaning of "control" is unambiguous. We therefore limit our analysis of the legislative history to the history offered by the parties, and, because there is no uncertainty as to the legislature's intent, we do not consider other maxims of statutory construction. *See id.* at 171-72 (discussing methodology).

■■■ "Control" is not statutorily defined. In its ordinary and relevant usage as a transitive verb, "control" means "to exercise restraining or directing influence over : REGULATE, CURB (~ one's anger)." *Webster's Third New Int'l Dictionary* 496 (unabridged ed 2002). In accordance with that definition, ORS 163.686 prohibits a person from exercising influence over prohibited visual recordings. Although a person exercises influence over a visual recording by downloading, saving, e-mailing or printing it, the definition of control is not limited to those particular volitional acts. A person is not required to actually manipulate a visual recording in order to control it. A person also exercises influence over a visual recording when a person discovers the presence of that recording on the Internet and causes that recording to appear on a specific computer monitor.

Here, the evidence is sufficient to demonstrate that defendant controlled the 10 photographic files found on his desktop computer. For those photographs associated with Counts 1 through 4, defendant controlled each of those files by receiving and downloading specific photographs from an Internet chat room. The evidence at trial is sufficient for a rational factfinder to find that defendant received those files as a result of his acts of communicating in the Internet chat room and only after defendant confirmed that he wanted to download those files. Defendant exercised his influence over

those visual recordings by taking actions to obtain them and by confirming that he wanted to download those files.

For those photographs associated with Counts 5 through 10, which appeared on two separate Web pages, the evidence shows that defendant searched on the Internet for Web pages of that nature, that defendant caused those Web pages to appear on his computer, that defendant took action to enlarge two of those photographs, and that defendant closed the Web pages to remove those photographic images from his computer monitor. Defendant controlled those photographs, first, by accessing and causing the Web pages on which they were displayed to appear on his computer monitor; second, by selecting two of those photographs to be displayed in a larger size; and third, by removing those photographs from his screen. Because defendant knowingly controlled each of those 10 visual recordings associated with Counts 1 through 10, we need not decide whether he also knowingly possessed them.

Defendant acknowledges that a "rational juror might conclude that a person using the Internet to access and view prohibited images is doing so for a sexual purpose." Defendant obtained the photographic images on his desktop computer from Web browsing and from the receipt of files in an Internet-based chat room. Accordingly, under the circumstances presented in this case, we agree with defendant that a rational factfinder could infer beyond a reasonable doubt that he did so for a sexual purpose. In addition, defendant does not contest that he was aware of and consciously disregarded the fact that the creation of those photographs involved child abuse. Where defendant knowingly controlled the 10 photographic files on his desktop computer, we conclude that the evidence was sufficient to support a conviction on those 10 counts of encouraging child sexual abuse in the second degree. Consequently, the trial court did not err when it denied defendant's motion for judgment of acquittal with respect to Counts 1 through 10.

## VENUE (COUNTS 11 THROUGH 20)

We turn next to Counts 11 through 20, relating to the photographic files found on defendant's laptop computer. As to those counts, defendant challenged the sufficiency of the

evidence to prove the statutory elements of encouraging child sexual abuse in the second degree, ORS 163.686, as well as the sufficiency of the evidence to establish venue in Clackamas County. We conclude that the evidence is insufficient to establish venue as to Counts 11 through 20, without reaching the issue whether the evidence is sufficient to prove the elements of ORS 163.686 as alleged in those counts.

■ Venue is a material allegation that the state must prove beyond a reasonable doubt. *State v. McMillan (A113456)*, 199 Or App 408, 412, 111 P3d 1154 (2005). As relevant to this case, venue is proper "in the county in which the conduct that constitutes the offense * * * occurred." ORS 131.305(1). "Conduct" means "an act or omission and its accompanying mental state." ORS 161.085(4).

Accordingly, pursuant to ORS 131.305(1), venue is proper in Clackamas County if defendant engaged in the conduct defined under ORS 163.686(1) while defendant was in Clackamas County. Defendant argues that the evidence does not show that he knowingly possessed or controlled the photographic images on the laptop computer within Clackamas County. The state responds that evidence that defendant lived and worked in Clackamas County allows a reasonable inference that defendant viewed the images in Clackamas County. For the following reasons, we agree with defendant.

There is "no *per se* correlation between the location of one's home and work and the site of his or her criminal activities." *State v. Panek*, 141 Or App 22, 28, 917 P2d 500 (1996). In *Panek*, the defendant lived and worked in Multnomah County, received medical treatments at a hospital located in Multnomah County, and fraudulently filed a workers' compensation claim seeking payments to that hospital. *Id.* at 24-25. However, absent any evidence that the defendant had filed his fraudulent claim from Multnomah County, or engaged in any fraudulent communications with the insurer while he was in Multnomah County, we concluded that a rational factfinder could not infer that the defendant engaged in any criminal conduct in Multnomah County. *Id.* at 27-28.

Similarly, here, we cannot infer that defendant engaged in any criminal conduct in Clackamas County merely from evidence that he lived and worked there. The

additional facts that defendant frequently used his laptop computer in Clackamas County and that defendant was generally logged on to instant-messaging services when he was at home may support an inference that defendant was *likely* at home when he downloaded, viewed, and deleted the photographic images on his laptop computer. However, the requisite standard of proof is beyond a reasonable doubt, and the evidence does not satisfy that standard.

The parties stipulated that the prohibited photographic images found on the laptop computer were obtained through Web browsing, but no evidence indicates where or when that Web browsing took place. The evidence shows that defendant purchased the laptop computer in early 2004, that defendant was an elementary school teacher at that time, and that defendant generally kept the laptop computer with him. Prior to the forensic examination of the laptop computer in the fall of 2004, defendant was on summer recess. Between the time when defendant purchased the laptop computer and the time of the forensic examination, no evidence indicates whether defendant and his laptop computer remained within the county. The record also does not indicate whether defendant accessed the Internet from his laptop computer exclusively within Clackamas County. In addition, no evidence in the record establishes the dates when defendant downloaded, viewed, or deleted the prohibited photographic images on the laptop computer or where defendant was located when he engaged in any of that conduct. Accordingly, the evidence is insufficient to show that defendant knowingly *controlled* the prohibited recordings within Clackamas County where no evidence substantiates that defendant downloaded, viewed, deleted, or otherwise exercised his influence over those recordings at his home or place of employment.

The evidence does show that the deleted files that contained those prohibited recordings remained on the physical space of the hard drive after deletion at a time when the laptop computer was in Clackamas County. However, as previously discussed, deleted files retained on the physical space of the laptop computer's hard drive are not accessible without the use of specialized data recovery software. The evidence does not establish that defendant knew that those deleted

files were retained there or that data recovery software could recover those deleted files. Because no evidence shows that defendant knew that those files remained on the hard drive after deletion, the evidence is insufficient to show that defendant *knowingly possessed* those visual recordings in Clackamas County or that he possessed those recordings within Clackamas County for a sexual purpose. Accordingly, where the evidence does not show beyond a reasonable doubt that defendant engaged in criminal conduct within Clackamas County, venue in Clackamas County is not proper pursuant to ORS 131.305(1).

Nonetheless, the state argues that, even if venue is not proper under ORS 131.305(1), venue is proper under ORS 131.325 in the county where defendant resides "[i]f the offense is committed within the state and it cannot readily be determined within which county the commission took place." However, no evidence indicates that, if defendant engaged in criminal conduct outside of Clackamas County, he nonetheless engaged in criminal conduct "within the state." Accordingly, the evidence is insufficient to establish venue in accordance with ORS 131.325. Consequently, we reverse the trial court's denial of defendant's motions for judgments of acquittal as to Counts 11 through 20.

## CONCLUSION

As to Counts 1 through 10, which were based on photographic files located on defendant's desktop computer, the evidence at trial was sufficient to prove beyond a reasonable doubt each and every element of the offense of encouraging child sexual abuse in the second degree. ORS 163.686. As to Counts 11 through 20, which were based on photographic files located on defendant's laptop computer, the evidence at trial was insufficient to prove beyond a reasonable doubt that venue was proper in Clackamas County. ORS 131.305(1); ORS 131.325.

Convictions on Counts 11 through 20 reversed; remanded for resentencing; otherwise affirmed.