Argued at Pendleton October 25, affirmed December 14, 1926, rehearing denied January 25, 1927.

## STATE v. EPHRIUM BARNES.

(251 Pac. 305.)

**Intoxicating Liquors — Defendant, Arrested at Place Where Liquor was Found, Held Guilty of Possessing Liquor.**

Defendant, arrested on abandoned ranch at night at place where liquor was found, together with containers in his automobile for handling of liquor, *held* guilty of possessing liquor. (Affirmed by divided court.)

Criminal Law, 16 C. J., p. 626, n. 80, p. 747, n. 47, p. 763, n. 41, p. 765, n. 57, 59, 60, p. 963, n. 75; 17 C. J., p. 313, n. 46.
Intoxicating Liquors, 33 C. J., p. 585, n. 97, 1, 1 New, p. 761, n. 43, p. 762, n. 61, p. 777, n. 59, 60, p. 778, n. 77, p. 790, n. 35, p. 792, n. 61.

From Baker: C. H. McCOLLOCH, Judge.

In Banc.

On the seventh day of April, 1926, a deputy sheriff of Baker County was called by telephone to a ranch about eight miles northeast of Baker by Mrs. King. When the officer arrived he and Mrs. King walked to an abandoned ranch belonging to a Mrs. Geddes which was about three quarters of a mile distant from the King ranch. A short distance within the fence of the abandoned ranch they discovered a ten-gallon keg of moonshine whisky buried in the ground which they removed from the earth, and the deputy placed it in his automobile. They also discovered a five-gallon keg a short distance away set in the ground and covered, except the cork in the bung-hole which was covered with some sage-brush twigs. They left the five-gallon keg and returned to the King ranch. The deputy then summoned to his aid two other officers who arrived at the King ranch about dark. The

See 8 R. C. L. 225.

three officers went to the Geddes ranch, leaving their automobile quite a distance from the place where the moonshine had been found and proceeded quietly on foot. By the time they arrived at the cache of liquor it was quite dark. They found at the place where the liquor was cached an automobile without lights and which was not discovered until they got within 25 or 30 feet thereof. One or two persons ran from the automobile when they discovered the officers. But the defendant was accosted by the deputy sheriff and asked what he was doing there. The automobile was absolutely dark and its front was towards the cache of moonshine and from 75 to 100 feet therefrom. The officer then examined the car, using his flashlight, and discovered that it was "loaded in the back." He then asked the defendant: "What does this mean?" The defendant responded: "Well, I don't know." The deputy sheriff further testified:

"A. I asked Mr. Barnes—he was standing there talking—and I says to him—he was telling about driving up the street and a man wanted him to give him a ride, or hire his car, and he says, 'I don't hire my car.' He says, 'Will you give me a ride?' He says, 'Yes.' I says to Mr. Barnes, I says, 'Who was this man?' He thought a little while and he says, 'Handy.' 'Where did you meet this man?' He says, 'I saw him on the street.' I says, 'How did you get acquainted with him?' He says, 'I walked up and asked him his name.'

"Q. You told Mr. Barnes at that time, did you, that he was under arrest?

"A. I told him shortly afterwards; I told him at that time.

"Q. Did he ask you why you were placing him under arrest?

"A. He did not."

The officer was not satisfied with defendant's explanation and placed him under arrest. Whereupon the defendant said: "What are you going to do with me?" and was informed that he would be taken back to Baker with the officer. Whereupon the defendant exclaimed: "My God, 1 will lose my children!"

They found in the car numerous articles, including seven jugs, some wicker covered jugs and a shovel on the ground beside the car which was not there in the evening of the same day when the place was visited by the deputy sheriff and Mrs. King. The defendant is charged with the crime of possession of intoxicating liquor. He was tried in the justice of the peace court, convicted and appealed to the Circuit Court, where he was again convicted and now appeals to this court from the judgment of sentence pronounced in the latter court. Defendant assigns numerous errors. We will notice only those we think worthy of consideration.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Nicholas, Hallock & Donald,* with an oral argument by *Mr. Jas. T. Donald.*

For respondent there was a brief over the name of *Mr. Leland S. Finch,* District Attorney, with an oral argument by *Mr. Frank C. McColloch.*

COSHOW, J.—The defendant objected to the introduction of the conversation between the deputy sheriff and the defendant. This evidence is clearly admissible, regardless of whether or not it is a part of the *res gestae,* because it is a declaration against interest: Or. L., § 727; *State* v. *Zullig,* 97 Or. 427, 432, 434 (190 Pac. 580).

The exception to the ruling of the court sustaining an objection to the question: "And never did come into the possession of Mr. Barnes, did it?" propounded on cross-examination to the deputy sheriff is also without merit. The record clearly discloses that the question had been answered in substance repeatedly. The situation discloses clearly that the defendant did not have the moonshine in his physical possession at the time of his arrest. The question involved was whether or not the defendant was guilty of the crime of unlawful possession of intoxicating liquors. It has been determined a number of times that it is not necessary for a party to have actual physical possession in order to be guilty of that crime. He may have constructive possession if he is the owner or has control and power to dispose thereof. The liquor found was upon an abandoned ranch. The gate that had formerly been in the fence near where the cache of moonshine was found was open or destroyed. Other people's range stock roamed over the ranch at will, consequently the liquor was not in the actual physical possession of any person. But whoever had power to dispose of that liquor or claimed to have that power and had knowledge of the place of its concealment would have constructive possession thereof: *State* v. *Labine,* 119 Or. 583 (250 Pac. 738) decided by this court November 16, 1926; *State* v. *Brown,* 113 Or. 149 (231 Pac. 926). In this state no one could have a rightful property in or possession of the liquor. In the light of the record the question to which the objection was sustained was improper. The physical facts and the circumstances surrounding the arrest and finding of the liquor all having been gone into thoroughly, both on direct and cross-examination, defendant was not en-

titled to require an answer from the officer as to whether or not defendant Barnes ever did come into possession of that liquor. It was very evident the officer knew nothing about the liquor, except what he had learned within the preceding three hours. There was nothing disclosed indicating that the officer had any intimation as to who had placed the liquor there. He had testified both on direct and cross-examination that so far as he knew the defendant was not in possession of the liquor. The way the question was framed in the light of what had gone before, it amounted to asking the witness for his conclusion of the fact to be determined by the jury. The other similar questions which were propounded by the defendant and to which objections were sustained were equally improper: 1 Greenleaf, Evidence (16 ed.), § 441B; *Farrell* v. *United States,* 110 Fed. 942 (49 C. C. A. 183).

The principal error assigned is the ruling of the court upon defendant's motion for a directed verdict of acquittal. This motion is based upon the alleged failure of the state to sufficiently connect the defendant with the possession of the liquor. It is claimed that the evidence is not sufficient to exclude every reasonable hypothesis other than that of guilt of the defendant. Defendant did not take the stand or adduce any evidence in his own defense. The evidence of the state is not in any way contradicted or impeached. It may be summarized thus: There were two kegs of moonshine whisky concealed by someone on the abandoned ranch; both kegs were buried in the ground; when the officer found them there was nobody present, except Mrs. King, who had directed the officer to the place; there were no buildings on the ranch near where the liquor was found; between the time the officer and Mrs. King uncovered the kegs of

liquor and the return of the officer with his two assistants, the defendant with one or two others had driven to the cache of liquor in the night-time eight miles from Baker where the defendant resides and works; defendant was the owner of the automobile which was darkened at the time it was found at the cache of liquor; a shovel was also found lying on the ground beside the car with a little soil on it, as though it had been thrown from the automobile and then fallen back. That shovel was not there a few hours before when the place was visited by the officer. There were in this car glass demijohns. This collection of articles together with the surrounding circumstances is evidence that the defendant was there to remove the liquor from its hiding place. The defendant stressed the fact that defendant had no interest in the land where the liquor was cached. Defendant's statement to the officer is without any explanation of his presence at the place. The jury had a right to infer from the circumstances that defendant knew where the liquor was. The presumption is that the shovel and the demijohns belonged to the defendant. There was no evidence connecting either of the two parties who ran from the car as the officers approached with the crime charged, excepting that they were with the defendant. The defendant in his conversation did not pretend that the man or men, as the case may be, who ran, owned or had any liquor at the place. His statements to the sheriff indicated that he was consciously guilty. His excuse that the man he met a week ago asked him to give him a ride without more is inconsistent with defendant's innocence. He did not claim that the shovel and the demijohns belonged to the man whom he was accommodat-

ing. Under the record we are of the opinion that there was sufficient evidence to go to the jury under proper instructions.

Whether or not the evidence and inferences properly deducible therefrom was sufficient to establish guilt was for the jury to determine—not the court.

"It is not every hypothesis, but every reasonable hypothesis but that of guilt, that the circumstantial evidence must exclude; the evidence need not demonstrate the guilt of defendant beyond the possibility of his innocence; and if the circumstances as proved produce a moral conviction to the exclusion of every reasonable doubt, they need not be absolutely incompatible, on any reasonable hypothesis, with the innocence of accused. · In short, if all the material circumstances in evidence point to guilt and exclude any reasonable hypothesis except that of guilt—in other words, if they are inexplicable on the theory of innocence—a conviction is warranted." 16 C. J. 765, § 1568.

Where there is material evidence of guilt the case should be submitted to the jury with proper instructions. That was done in this case, and we are bound by the result. The jury was correctly instructed that if there were any reasonable hypothesis of defendant's innocence he must be acquitted. There certainly was material evidence of defendant's guilt. The case of *State* v. *Bouy,* decided by this court January, 1925, would be in point if Mrs. Geddes, owner of the land, were the defendant, and she were charged of being in possession of the liquor because it was concealed on her land. But it is not applicable to the case at bar. Here the defendant is found at night eight miles away from his home with a tool adapted to dig up the kegs containing the liquor and convenient containers for transporting it at the place

where it was concealed in the soil of an abandoned ranch, supposedly unknown to any person other than one having control thereof. He makes worse than no attempt to explain his presence there: 33 C. J. 777, 778, § 531, and particularly note 77. His presence at the liquor cache at the time and under the circumstances is *prima facie* evidence of his possession.

Defendant complains of several instructions given by the court and the modification of requested instructions. The only contention requiring discussion is regarding the court's definition of "possession." The court gave the instruction requested by defendant defining the word "possession." This instruction substantially follows the instruction approved by this court in *State* v. *Harris,* 106 Or. 211 (211 Pac. 944), *State* v. *Brown,* 113 Or. 149 (231 Pac. 926). A most urgent argument is against the propriety of the following instruction:

"It is not necessary that the premises wherein the liquor was cached or buried should belong to the defendant, nor that he should have a legal right of possession of the place; nor is it necessary that the defendant be the owner of the liquor in question; nor is it necessary that the defendant should have been handling the same; nor is it necessary that the liquor in question be found upon his person or in his car,— if you find that the car which was at the place in question was defendant's car. *It is only necessary for the State to prove to your satisfaction beyond a reasonable doubt that the liquor in question was under the control of the defendant, and if you find beyond a reasonable doubt that the liquor in question was intoxicating liquor, and under the control of the defendant, then you must find the defendant guilty as charged.*"

Defendant's able counsel especially attacked that portion of the instruction italicized. In our opinion

that instruction is free from error. This instruction correctly states the law controlling the case at bar. The facts in the Harris case differed from the facts in the instant case. Here the liquor was not in any dwelling or structure. It had been concealed in land not in the actual physical possession of anyone. The person who had knowledge of the place in which the liquor was hid may be said truly to have symbolic possession of it. As was held by this court in *Waite* v. *Grubbe*, 43 Or. 406 (99 Am. St. Rep. 764, 63 Pac. 206), revelation of the hiding place of money with the statement that he gave it to the claimant was a symbolic delivery of that money and constituted a valid gift. The principle involved in that case was whether or not a delivery of the money had been made to the donee. It is immaterial whether the defendant in this case originally deposited the liquor where it was found or its hiding place revealed to him by the party who did deposit it or he otherwise learned of its place of concealment. He was found there with his own automobile, with the necessary tools for excavating the liquor and with containers customarily used for the convenient handling of liquor. The jury could infer from all this that he claimed the right and had the power to control, manage and dispose of the same. If the defendant had the control of that liquor concealed as it was, he was guilty of unlawful possession thereof.

We have examined all the other assignments and find no errors. The judgment is affirmed.

AFFIRMED. REHEARING DENIED.

RAND, J., absent.

BURNETT, BROWN and BELT, JJ., dissent.