Argued and submitted September 14, 2010, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court with instructions to enter a judgment of acquittal January 6, 2011

STATE OF OREGON,
*Respondent on Review,*

*v.*

BARRY LOWELL BARGER,
*Petitioner on Review.*

(CC 200721991, 200801740;
CA A138678 (Control), A138679;
SC S058345)

247 P3d 309

Kristin A. Carveth, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Erika L. Hadlock, Senior Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

Before De Muniz, C. J., and Durham, Balmer, Kistler, Walters, and Linder, JJ., and Gillette, J. pro tempore.**

GILLETTE, J. pro tempore

** Landau, J., did not participate in the consideration or decision of this case.

De Muniz, C. J., concurred and filed an opinion.

Kistler, J., dissented and filed an opinion, in which Linder, J., joined.

## GILLETTE, J. pro tempore

This criminal case involves the following question: Can a person be found guilty of "possess[ing] or control[ling]" digital images of sexually explicit conduct involving a child, as that phrase in used in ORS 163.686(1)(a),[1] based on evidence showing only that the person searched for and found such images through the Internet on his or her computer? Although the trial court in the present case acknowledged that "the world of the Internet presses * * * the boundaries of what we normally understand to be possession and control," it ultimately concluded that a jury *could* find defendant guilty under ORS 163.686(1)(a) based solely on such evidence. As we explain below, we disagree with that conclusion: The statute requires something more than simply accessing and looking at incorporeal material of the kind involved here to "possess" or "control" that material. Accordingly, we reverse both the circuit court judgment and the Court of Appeals decision affirming that judgment.

In the course of investigating a report that defendant had sexually abused a child, a City of Eugene Police Officer, Sullivan, talked to defendant's wife, who told him that there was some "weird" material on the couple's home computer. Defendant's wife showed the computer to Sullivan, who looked at the computer's web-address history and saw three addresses that, based on their titles, seemed suspicious.

A few weeks later, the Eugene police asked defendant's wife if she would allow them to take the computer and examine it. She consented. Thereafter, Eugene police detective Williams, who was certified in computer forensics, took possession of the computer, made a copy of the hard drive, and used certain forensic software to examine that hard drive.[2] Based on Williams's findings, defendant was charged with eight counts of Encouraging Child Sexual Abuse in the Second Degree, ORS 163.686, by possessing or controlling a visual recording of sexually explicit conduct involving a child.

---

[1] The pertinent text of ORS 163.686(1)(a) is set out at 349 Or at 558-59.

[2] As the case comes to us, there is no issue concerning the validity of the wife's consent to Williams's possession and examination of defendant's computer.

Each charge was based on a separate digital image that Williams found in the computer's "temporary internet file cache."

As Williams later explained at defendant's jury trial, temporary Internet files found in a computer are the product of an automatic function of a computer's web browser. Whenever a computer user visits a web page, the browser creates a copy of the web page and stores it in a temporary Internet file "cache," where it remains until the space is used up and written over, or it is erased. If a user calls up the same web page at some later date, the browser simply accesses the copy from the temporary files, rather than going through the slower process of downloading the same information from the web page. Computer users with ordinary skills would not necessarily be aware of that function or know how to go about accessing information stored in the temporary Internet file cache.

Williams testified that, when he received the computer, only one of the three addresses that had triggered Sullivan's suspicions remained in the web-address registry but that, by examining other Internet activity files, he was able to identify two other suspicious web addresses that someone had accessed in the recent past. Williams stated that he checked all three websites and that all appeared to contain pornographic images of prepubescent girls and girls in their early teens.[3]

Williams testified that he then searched for similar images that might be stored on the computer's hard drive, using certain words and phrases commonly used in child pornography. He acknowledged that he did not find any images of that kind that had been purposefully copied and saved in any user's personal files. He did, however, discover sexually explicit images of prepubescent girls in the computer's temporary Internet file cache.

---

[3] Again, as the case comes to us, defendant does not argue that the evidence was insufficient to establish that the various images that Williams identified were of "sexually explicit conduct involving a child," as that phrase is used in the governing statute, ORS 163.686.

The prosecution then presented the specific evidence that it asserts established defendant's guilt of the eight charges of Encouraging Child Sexual Abuse. The evidence included the eight digital images, all of which Williams had discovered in the temporary Internet file cache of defendant's computer, and which were the bases of the charges. Williams acknowledged that there was nothing about the images that identified what website they had come from and that there was no way to know with absolute certainty whether the images had been accessed intentionally by a user or "were the result of pop-up windows or browser redirects." Williams further explained, however, that pornographic pop-ups and redirects occur almost exclusively when a computer user visits another pornographic website.

After presenting Williams's testimony, the state rested. Defendant then moved for a judgment of acquittal, arguing that there was no evidence that the eight images at issue had made their way onto the hard drive through any intentional or knowing action by him and that, even if it was possible to infer that defendant had *accessed* the images through web browsing, that inference was insufficient to establish defendant's knowing *possession* or *control* of those images. The trial judge denied defendant's motion, and the jury ultimately returned guilty verdicts on all eight charges. On defendant's appeal, the Court of Appeals affirmed without opinion. *State v. Barger*, 233 Or App 621, 226 P3d 718 (2010). We allowed defendant's petition for review.

Before this court, defendant argues that, although the state's evidence might support an inference that he had accessed and viewed the images at issue, the evidence would not support an inference that he ever knowingly "possess[ed] or control[led]" them within the meaning of ORS 163.686(1)(a).

Because there is no evidence in the record suggesting that defendant knew about the computer's automatic caching function or how to access material in the cache, the state does not now argue, and never has argued, that defendant "knowingly possess[ed] or control[led]" the images at issue insofar as they existed in his computer's temporary

Internet file cache. Instead, the state's position is a more simple one. It argues that, because defendant's computer gave him the capability to print, save, e-mail, and otherwise manipulate the images in question, his actions of intentionally accessing one or more websites that contained the proscribed images, thus causing those images to be displayed on his computer screen, constituted "possess[ion] and control[ ]" in the required sense. The question for this court thus is a narrow one: Can a computer user be found to have knowingly "possess[ed] or control[led]" digital images of child sexual abuse, within the meaning of ORS 163.686(1)(a)(A)(i), based solely on evidence showing that, at some time in the past, he intentionally accessed those digital images using his computer's Internet browser and—by reasonable inference—looked at them?[4]

■ The answer to that question depends on what the legislature that enacted ORS 163.686(1)(a) intended by the phrase "possesses or controls" and on whether an activity that is commonplace now but was far less common at the time of the statute's enactment[5] comes within the meaning that the legislature intended for that statute. To determine the legislature's intent, we employ the methodology set out in ORS 174.020 and *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). Specifically, we first consider the text and context of the statute and then, if we so choose, consider any legislative history that the parties might proffer.

We begin with the part of the statutory text that is relevant to the charges against defendant. ORS 163.686 provides, in part:

"(1)   A person commits the crime of encouraging child sexual abuse in the second degree if the person:

"(a)(A)(i)   Knowingly possesses or controls any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child for the purpose

---

[4] This case therefore presents no question concerning defendant's possible criminal liability if, for example, he understood the temporary Internet file cache function on his computer and knew how to access that location. We express no opinion on that issue.

[5] ORS 163.686 was adopted, together with several other provisions relating to visual recordings of child sexual abuse, in 1995. Or Laws 1995, ch 768, § 3.

of arousing or satisfying the sexual desires of the person or another person; [and]

"* * * * *

"(B)   Knows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse[.]"

As our synopsis of the arguments suggests, the operative words in the present inquiry are the verbs "possesses" and "controls."

■■     The verb "control" is not statutorily defined, but its common meaning, as set out in *Webster's Third New Int'l Dictionary* 496 (unabridged ed 2002), is "to exercise restraining or directing influence over: REGULATE, CURB." The word "possess," on the other hand, *is* statutorily defined: For purposes of most Oregon criminal statutes, including ORS 163.686, it means "to have physical possession or otherwise to exercise dominion or control over property." ORS 161.015(9). As this court explained in *State v. Fries*, 344 Or 541, 545-47, 185 P3d 453 (2008), that definition of the word "possess" encompasses two alternative ways of possessing property that this court traditionally has recognized: (1) *physically* controlling the property ("actual" possession) and (2) exercising some *other* kind of dominion or control over the property ("constructive" possession). Put differently, to "possess" a thing traditionally means to control it, and "actual possession" and "constructive possession" are simply different types of control. *Id.*; *see also State v. Connally*, 339 Or 583, 591, 125 P3d 1254 (2005) (making a similar point about the ordinary dictionary meaning of the term "possession").

Because the idea of control is inherent in the statutory term "possess," it is odd that the legislature chose to define the crime of encouraging child sexual abuse in terms both of "possessing" and of "controlling" certain kinds of images. The state explains that choice as a considered decision to recognize that "control" *itself* may be both actual and constructive, and to define the crime set out in ORS 163.686(1)(a) in terms of (1) actual possession, *i.e.*, physical control of an object; (2) constructive possession, *i.e.*, "dominion or power" over the object that is not necessarily exercised;

and (3) actual control, *i.e.*, active restraint or direction of the object.

That explanation is creative, but it is not persuasive. We think it highly unlikely that the legislature engaged in that kind of parsing of terms or that it even recognized that, in light of the statutory definition of the term "possess," the inclusion of the term "control" was duplicative. Instead, we believe it is more logical to conclude that the legislature's choice of words reflects its desire to ensure that the crime not be limited to a narrow, solely physical, concept of possession. In other words, it would appear that the legislature used *two* words to convey the same broad meaning that ORS 161.015(9) actually conveys in the single word "possess" and that, at least in the criminal law context, this court traditionally has ascribed to that word; *viz.*, to *physically or bodily* possess or control something *or* to exercise dominion or control (*i.e.*, a restraining or directing influence) over it *in some other way. See, e.g., State v. Oare*, 249 Or 597, 599, 439 P2d 885 (1968) (crime of unlawful possession of marijuana includes actual and constructive possession); *State v. Barnes*, 120 Or 372, 379-80, 251 P 305 (1927) (crime of unlawful possession of intoxicating liquor includes actual and constructive possession).

■    At this stage of our interpretive process, we also consider the statutory context in which the wording under consideration appears. Defendant points to a contextual clue—a related section of the provision under consideration—that we agree is relevant. The "possesses or controls" wording at issue in this case appears in a subparagraph of ORS 163.686—subparagraph (1)(a)(A)(i)—that describes one way of committing the crime of Encouraging Child Sexual Abuse in the Second Degree. However, the next subparagraph of the statute describes an *alternative* way to commit the same crime. It states that a person commits the crime by

"Knowingly pay[ing], exchang[ing] or giv[ing] anything of value to *obtain or view* a photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child for the purpose of arousing or

satisfying the sexual desires of the person or another person."

ORS 163.686(1)(a)(A)(ii) (emphasis added).[6]

There are two significant things about subparagraph (ii). The first is that it is an alternative definition of the same crime—Encouraging Child Sexual Abuse in the Second Degree—that is defined in subparagraph (i), discussed at length above. The second is that it criminalizes the actions of paying to obtain and view visual recordings of child sexual abuse. Although other state legislatures have chosen to criminalize the act of viewing child pornography in and of itself,[7] the wording of ORS 163.686(1)(a)(A)(ii) demonstrates to us that the Oregon legislature made a different choice: It chose *not* to criminalize the act of *viewing* child pornography, unless that act is accompanied by paying, exchanging, or giving "anything" *of value*. (That same requirement is true of the act of "obtaining" child pornography.)

That legislative choice is relevant to our reading of ORS 163.686. Whatever "knowingly possess[ing] or control[ling]" recordings of child sexual abuse might mean in subparagraph (1)(a)(A)(i), it involves something different than simply "obtain[ing]" or "view[ing]" digital images: The legislature clearly has chosen to criminalize the act of "view[ing]" or "obtain[ing]" visual recordings of sexually explicit conduct involving children under ORS 163.686(1)(a)(A)(ii) *only if that act is accompanied by the payment, exchange, or giving of something "of value,"* an element that is not required under ORS 163.686(1)(a)(A)(i).[8]

---

[6] As is true of subparagraph ORS 163.686(1)(a)(A)(i), that subparagraph applies only if the person "[k]nows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse." ORS 163.686(1)(a)(B).

[7] *See, e.g.*, Ark Code Ann § 5-27-304(a)(2) (no person shall "solicit, receive, purchase, exchange, possess, *view*, distribute, or control" child pornography); NJ Stat Ann § 2C: 24-4(b)(5)(b) (making it a crime to "knowingly possess[ ] or knowingly *view*[ ]" child pornography; Ohio Rev Code Ann § 2907.323(A)(3) (no person shall "possess or *view*" child pornography). (Emphasis added in each parenthetical.)

[8] The dissent suggests a different reading of subsection (ii). It argues that the gravamen of the subsection is the act of *payment*, so that the ultimate success of the payor in *actually* obtaining or viewing any child pornography is irrelevant. That is, the dissent reads the subsection as a prohibition on *attempting* to obtain or possess child pornography. Thus, according to the dissent, the subsection should be read as if it made it a crime to "[k]nowingly pay * * * anything of value to obtain or view[, *or*

■ A final source of contextual evidence is the body of cases that interpret or discuss the definition of "possess" provided by ORS 161.015(9)—the statute that, as discussed, applies to ORS 163.686(1)(a)(A)(i) and therefore expresses the meaning that the legislature intended to convey by the phrase "possesses and controls" in ORS 163.686(1)(a)(A)(i). In general, those cases deal with possession of tangible objects—firearms, drugs, forged checks, and the like—and thus are not perfect analogies for determining how the concepts of actual and constructive possession apply to a digital image that once appeared on a computer screen and now is retained in some form on the computer's hard drive. Certain of the cases *are* relevant, however, to the extent that they show that even *constructive* possession of a thing, *i.e.*, dominion or control over it, cannot be established merely by showing that the thing was in close proximity or physically available to a potential possessor. *See, e.g.*, *State v. Casey*, 346 Or 54, 203 P3d 202 (2009) (fact that visitor's gun, which had been left on counter in defendant's home, was in close proximity to defendant when he went into home to retrieve items for police officers waiting outside would not support defendant's conviction on charge of felon in possession of firearm); *see also State v. Daniels*, 348 Or 513, 234 P3d 976 (2010) (rejecting state's claim that methamphetamine found in defendant's home, in a purse that belonged to defendant's girlfriend, was constructively in defendant's possession because it was *available* for his use).[9]

■ With the foregoing background concerning the meaning of the phrase "possesses or controls" in ORS 163.686(1)(a)(A)(i) in mind, we turn to the specific question

---

*to attempt to obtain or view,*] [child pornography]." Such a construction of the wording is clever, but we think that the method of achieving it—adding words that the legislature did not use—and the resultant significant expansion of the scope of the prohibition needs a far stronger justification than bare linguistic plausibility. We thus reject the dissent's reading of that subsection.

[9] The same message is conveyed in other cases that discuss the common-law concepts of actual and constructive possession, which ORS 161.015(9) ultimately codified. *See, e.g.*, *Oare*, 249 Or at 598-600 (fact that the defendant was present at the attempted disposal of marijuana in someone else's home was insufficient to find constructive possession); *State v. Weller*, 263 Or 132, 501 P2d 794 (1972) (fact that defendant lived in a bedroom in a house also occupied by other persons was insufficient basis for finding that defendant had control or right to control marijuana plants found in another (unoccupied) bedroom in the house).

that this case presents: Does a computer user's act of accessing an Internet web page and intentionally calling digital images of child sexual abuse onto a computer screen constitute "possess[ion] or control[ ]" of those images within the meaning of that statute? The state asserts that it does, and offers three different explanations for its answer.

First, the state contends that, insofar as a computer user has physical control over a computer screen, he or she has physical control ("actual" possession) of any images that appear on it. The state points to the fact that a computer user can move his or her monitor from one place to another and thereby display the image appearing on the screen wherever he or she chooses. We think, however, that that argument misses the point: The intangible nature of a web image is analogous to seeing something that a visitor has temporarily placed in one's own home. One may be *aware* of it, may even have asked the visitor to bring it for viewing, but one does not thereby *possess* the item.

The state argues, next, that a computer user "controls" a digital image of child pornography by actively navigating to the website where it resides, thereby bringing the image to his computer screen. We think, however, that this argument suffers from some of the same defects as the preceding one: Looking for something on the Internet is like walking into a museum to look at pictures—the pictures are where the person expected them to be, and he can look at them, but that does not in any sense give him possession of them.

Finally, the state argues that, to establish that defendant "controlled" the images at issue at the time that they appeared on his computer screen, the state need only show that, at that time, defendant had the *ability* to direct or influence the images (by, for example, showing that he had the ability to save, copy, print, or e-mail them), and that it need not show that defendant actually *exercised* any such influence or control. In support of that theory, the state points to certain of this court's cases that describe constructive possession in terms of a "right" to control the object in

question. *See, e.g., Oare*, 249 Or at 599 ("evidence of the control or the right to control is necessary to constructive possession"); *State v. Weller*, 263 Or 132, 501 P2d 794 (1972) (quoting *Oare* to same effect); *State v. Barnes*, 120 Or 372, 380, 251 P 305 (1926) (jury could conclude that defendant constructively possessed intoxicating liquor to the extent that evidence showed that he "claimed the right and had the power to control, manage and dispose of the same").

The state's position is problematic in a number of respects. First, it assumes that, when this court in *Oare* and other cases described constructive possession in terms of the "right" to control a thing, it meant nothing more than a bare and practical "ability" to exercise a directing or restraining influence. We do not read the cases that way. *Oare* and *Weller* both involved property that was physically present in places to which the defendants had access, so that the defendants physically could have taken up and moved or otherwise used the items. In both cases, this court found that physical ability to be insufficient by itself to support a charge of constructive possession. *See Oare*, 249 Or at 599; *Weller*, 263 Or at 133 (both to that effect). And, although this court in *Barnes* held that a jury *could* infer that the defendant claimed a right to control (and therefore possessed) the moonshine whiskey at issue in that case, its conclusion in that regard was based on the existence of evidence that the defendant was not only at the site where the whiskey was concealed, but had tools and containers designed to remove the whiskey from its hiding place. We conclude from the foregoing, then, that when the court in *Oare* and other cases referred to a "right" to control a thing, it was referring to something akin to a *legal* right to do so—a concept that is useful in discussing the distinction between "ownership," "possession," and mere "custody" of property, but one that is not helpful here.[10]

---

[10] Thus, in *State v. Keelen*, 103 Or 172, 203 P 306 (1922), this court quoted a Kentucky case for the proposition that

" 'there is a difference between custody and possession. Possession is the present right and power to control a thing. A person has the custody of property, as distinguished from the possession, where he merely has the care and charge of it for one who retains the right to control it, and who therefore retains constructive possession.' "

*Id.* at 182-83 (quoting *Shipp v. Patten*, 123 Ky 65, 93 SW 1033 (1906)).

■   What is more, there is no support in this court's cases for the idea that a mere unexercised *ability* to manipulate a thing can constitute constructive possession of it. Indeed, *State v. Casey*, discussed earlier, is to the contrary. In that case, this court considered and rejected the state's contention that a visitor's gun, which had been left on a counter in the defendant's trailer, was under the defendant's "dominion and control" (and, thus, in his constructive possession) when he went into the trailer to retrieve certain items for police officers who were waiting outside. 346 Or at 62-63. It is clear from that decision that the mere fact that an object is within a person's reach, and that the person thus has a physical *ability* to exercise some directing or restraining influence over it, is insufficient to establish constructive possession of the object. And, to the extent that, in *Daniels, Oare,* and *Weller*, this court also declined to infer possession or control from the mere fact of proximity or availability, those cases convey a similar message.[11]

■   A final problem with the state's theory about the meaning of "control" is that it would sweep in more factual scenarios than we believe the legislature could possibly have intended. If the mere *ability* to cause an item to appear on a computer screen is sufficient to constitute "control" or constructive "possession" of the item for purposes of ORS 163.686(1)(a)(A)(i), then *any* person who uses the Internet (and, indeed, any person who is within physical reach of some

---

[11] The state finds a contrary message in *State v. Miller*, 238 Or 411, 395 P2d 159 (1964). In *Miller*, the court concluded that a jury could find that a defendant had violated the statutory prohibition on felons having any firearm "in his possession or under his custody or control," ORS 166.270 (1963), when he drove a car some 400 miles knowing that two loaded guns that purportedly belonged to a passenger in the car were under the car's front seat and within his reach, and that another gun was in the glove compartment of the car. *Id*. at 412-13. But the case involved more than the simple *availability* of the guns to the defendant: The guns were found in a vehicle that the defendant had borrowed from a relative and that the defendant was driving, other suspicious items were found in the car, and another person had accused the defendant and his passenger of "rolling" him. *Id*. Moreover, in reaching its conclusion, the court did not discuss the meaning of the concepts of actual and constructive possession but, instead, simply cited and followed a Pennsylvania case with similar facts. *Id*. at 413, *citing Commonwealth v. Whitman*, 199 Pa Super 631, 186 A2d 632 (1963). As such, the case does not appear to stand for the proposition for which the state offers it, *viz.*, that this court has concluded in the past that the mere *ability* to control some object amounts to constructive possession or control of that object.

tangible item of child pornography) can be deemed to be guilty of violating that statute, at least insofar as the element of possession or control is involved. Of course, the state contends that a person who already has accessed an image of child sexual abuse on his computer has a more direct and immediate ability to save, print, or otherwise control that image than does a computer user who has not accessed the image, and that that directness and immediacy makes the difference. But that argument still is nothing more than the assertion, rejected by this court most recently in *Casey*, that the *ability* to possess or control a thing means that one actually *is* possessing or controlling it.[12]

In a final version of that argument, the state insists that a person who uses a computer to look at images of child pornography does more than just *view* the images that he brings to the screen. It contends that, because computers have the *capacity* to save, print, post, and transmit those images "with only a few mouse clicks," web browsing for child pornography is qualitatively different from other methods of "viewing" child pornography, and falls within the intended meaning of the phrase "possesses or controls" in ORS 163.686(1)(a)(A)(i). But we think that our recent holdings in *Casey* and *Daniels* fully answer that argument, particularly where the state fails to explain why existence of those capacities in the viewing device would transform viewing into possession. Neither do we see anything in the statutory wording that would support that idea.

For the foregoing reasons, we are not persuaded by the state's theories as to how and why, in the absence of some additional action by a computer user beyond that proved here, the user could be deemed to "possess" or "control," in any sense that this court heretofore has recognized, a digital image that he or she has called up on a computer screen.

---

[12] Our reservations about the state's attempt to define "control" solely in terms of *ability* to exercise directing or restraining influence should not be interpreted as acceptance of defendant's theory that constructive possession or control requires *active* exercise of such influence in all cases. It is clear, for example, that when a person who has a property interest in some item places that item in the custody of another person, he or she can retain constructive possession by retaining the *power* to control the item, regardless of whether he or she actively exercises that power. But, as we have explained, that is not this case.

Instead, we are satisfied that the statute before us, ORS 163.686(1)(a)(A)(i), when read in the light of its context (particularly ORS 163.686(1)(a)(A)(ii)), embodies a considered legislative choice not to criminalize the mere "obtaining" or "viewing" of child pornography without consideration. Thus, we conclude that the acts at issue here—navigating to a website and bringing the images that the site contains to a computer screen—are not acts that the legislature intended to criminalize.[13]

Applying our conclusions to the record in this case, we hold that defendant's motion for a judgment of acquittal should have been granted. There is no evidence in the record that, at any time, defendant "possess[ed] or control[led]" any of the eight images that are the subject of the charges against him under ORS 163.686(1)(a)(A)(i).

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court with instructions to enter a judgment of acquittal.

**DE MUNIZ, C. J.,** concurring.

I agree with the majority's conclusion in this case and in *State v. Ritchie*, 349 Or 572, 248 P3d 405 (2011), that

---

[13] In so concluding, we recognize that some courts in other jurisdictions have reached a different conclusion on the basis of theories that are similar, if not identical, to the ones that the state has advanced in this case. *See, e.g., People v. Josephitis*, 394 Ill App 3d 293, 914 NE2d 607 (2009) (defendant who actively sought out illicit websites, paid for access, maintained websites among his "favorites" and viewed numerous images of child pornography, and who had the ability to copy, print, or send images to others, "possessed" the images he viewed); *Commonwealth v. Diodoro*, 601 Pa 6, 970 A2d 1100 (2009), *cert den*, _____ US _____, 130 S Ct 200, 175 L Ed 2d 127 (2009) (accessing and viewing child pornography over the Internet constitutes "control" of the pornography sufficient to support conviction of crime of possessing child pornography); *United States v. Kain*, 589 F3d 945 (8th Cir 2009) (a computer user who intentionally accesses child pornography images on a website gains actual control over the images). We note, however, that the analyses in those cases provide little or no help for our analysis of the relevant Oregon statutory text and context. Certainly, none of the cases involves statutes that effectively announce that "viewing" child pornography is not, by itself, unlawful.

We also note that some other courts have concluded, as we do, that accessing child pornography on the Internet does not constitute possession or control of such materials. *See, e.g., Worden v. State*, 213 P3d 144 (Alaska App 2009); *Barton v. State*, 648 SE2d 660 (Ga App 2007).

defendants did not violate ORS 163.686(1)(a)(A)(i) when they viewed pornographic images on the Internet. Although the legislature might have intended that ORS 163.686 criminalize "the mere 'obtaining' or 'viewing' of child pornography without consideration," the words the legislature used in the statute do not reveal that intent. 349 Or at 553. In agreeing with the majority's conclusion, I wish to point out that the prosecution made a choice in both these cases not to argue that the legislature had intended that the "possession or control" element of ORS 163.686 could be satisfied by the storage in the computer's temporary Internet cache, and later in unallocated space in the computer's hard drive, of the digital images that each defendant had viewed.[1] That said, I believe it is also important to identify the chasm that presently separates the statutory texts at issue here from the technological realities of the digital age in which we live.

As the majority correctly identifies, the crime of encouraging child sexual abuse in the second degree, ORS 163.686, requires, among other things, the knowing possession or control of "any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child[.]" Although the Internet was a well-established fact of life at the time that ORS 163.686 was enacted in 1995, nothing in that statutory text suggests that the legislature expressly intended to capture the kind of digital computer images that purveyors of child pornography now use as their principal means of communication and distribution. *See* Ty E. Howard, *Don't Cache out Your Case: Prosecuting Child Pornography Possession Laws Based On Images Located In Temporary Internet Files*, 19 Berkeley Tech LJ 1227, 1228 (2004) (noting that, for defendants presently collecting and trafficking in child pornography, the media of choice are now digital images and the medium of choice is the Internet). Instead, and unfortunately, the legislature appears to have assumed that the proscribed pornographic images would appear on or in tangible objects—photographs, motion pictures, videotapes, or other visual recordings.

---

[1] Nor did the state contend in *Ritchie*, with respect to counts 1 through 4, that the "possession or control" element of ORS 163.686(1)(a)(A)(i) was satisfied insofar as the contents of the zip file associated with those counts had been stored in unallocated space on the relevant hard drives.

In 1997, when the legislature enacted ORS 163.688 and ORS 163.689,[2] the legislature demonstrated that it was capable of proscribing the possession of digital images, like those at issue here, for purposes of the Oregon Criminal Code. Those statutes made it a crime to knowingly possess and use—or attempt to use—"any visual depiction of sexually explicit conduct involving a child," for the purpose of inducing another child to engage in sexual acts. When it enacted those statutes, the legislature specifically defined the terms "visual depiction" to include computer-related images:

"As used in ORS 163.670 to 163.693:

"* * * * *

" 'Visual depiction' includes, but is not limited to, photographs, films, videotapes, pictures or computer or computer-generated images or pictures, whether made or produced by electronic, mechanical or other means."

ORS 163.665(4) (emphasis added).

Unfortunately, the legislature did not add those, or similar terms, to Oregon's other child pornography statutes. Today, the phrase "visual depiction" and its attendant definition currently find use only in ORS 163.688 and ORS

---

[2] ORS 163.688 provides:

"(1) A person commits the crime of possession of materials depicting sexually explicit conduct of a child in the first degree if the person:

"(a) Knowingly possesses any visual depiction of sexually explicit conduct involving a child or any visual depiction of sexually explicit conduct that appears to involve a child; and

"(b) Uses the visual depiction to induce a child to participate or engage in sexually explicit conduct.

"(2) Possession of materials depicting sexually explicit conduct of a child in the first degree is a Class B felony."

ORS 163.689 provides:

"(1) A person commits the crime of possession of materials depicting sexually explicit conduct of a child in the second degree if the person:

"(a) Knowingly possesses any visual depiction of sexually explicit conduct involving a child or any visual depiction of sexually explicit conduct that appears to involve a child; and

"(b) Intends to use the visual depiction to induce a child to participate or engage in sexually explicit conduct.

"(2) Possession of materials depicting sexually explicit conduct of a child in the second degree is a Class C felony."

163.689, and that, in turn, has created the interpretive conundrum that this court faced in this case and in *Ritchie*. Clearly, the legislature knows how to expressly criminalize certain kinds of computer media when it wants to: it did so with respect to ORS 163.688 and ORS 163.689. It is equally clear, however, that at the same time that it created and defined the phrase "visual depiction," the legislature could have incorporated that term or something similar throughout the statutes at issue here, but did not. The upshot of that omission is that, for the purposes of ORS 163.686, possessing or controlling a "photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child" is best interpreted under our framework for statutory analysis as a reference to the possession or control of some corporeal item—a tangible, physical object—rather than its purely digital counterpart. The statute we interpret today appears not to have been written for the digital world in which we live, making the legislature's intent very difficult to discern and apply in the cases at issue here.

Other states have anticipated or experienced similar statutory disconnects with regard to Internet child pornography prosecutions; their response has often been to expand the relevant statutes to expressly capture proscribed computer-based activities. In 2010, for example, Alaska amended its provisions criminalizing the possession of child pornography by adding the statutory text highlighted below:

"(a) A person commits the crime of possession of child pornography if the person knowingly possesses *or knowingly accesses on a computer with intent to view* any material that visually depicts conduct described in AS 11.41.455(a) knowing that the production of the material involved the use of a child under 18 years of age who engaged in the conduct or a depiction of a part of an actual child under 18 years of age who, by manipulation, creation, or modification, appears to be engaged in the conduct."

AS 11.61.127(a) (emphasis added). In 2007, Virginia similarly amended its definition for "sexually explicit visual material" as it related to the state's child pornography laws in order to expressly include images contained on the *temporary Internet cache* of a computer:

"For the purposes of this article and Article 4 (§ 18.2-362 *et seq.*) of this chapter, the term "sexually explicit visual material" means a picture, photograph, drawing, sculpture, motion picture film, digital image, *including such material stored in a computer's temporary Internet cache when three or more images or streaming videos are present,* or similar visual representation which depicts sexual bestiality, a lewd exhibition of nudity, as nudity is defined in § 18.2-390, or sexual excitement, sexual conduct or sadomasochistic abuse, as also defined in § 18.2-390, or a book, magazine or pamphlet which contains such a visual representation. An undeveloped photograph or similar visual material may be sexually explicit material notwithstanding that processing or other acts may be required to make its sexually explicit content apparent."

VCA 18.2-374.1(A) (emphasis added).

In writing today, I do not presume to instruct Oregon lawmakers on how to go about their business. My objective is simply to demonstrate that, with regard to the crime of encouraging child sexual abuse, Oregon can brings its laws into step with contemporaneous technological realities just as other states have done. Oregon's citizens—and its justice system—will all benefit as a result.

**KISTLER, J.,** dissenting.

I would affirm the Court of Appeals decision and the trial court's judgment for the reasons stated in the dissenting opinion in *State v. Ritchie,* 349 Or 572, 248 P3d 405 (2011) (Kistler, J., dissenting).

Linder, J., joins in this opinion.