Argued and submitted May 17, reversed October 3, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*
ROBERT W. TILDEN,
*Defendant-Appellant.*
Tillamook County Circuit Court
081065; A146914

288 P3d 567

John J. Tyner, III, argued the cause for appellant and filed the brief for appellant.

Ryan P. Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R.

Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

A jury found defendant guilty of 101 counts of second-degree encouraging child sexual abuse under ORS 163.686 (2005),[1] based on sexually explicit images of children that were found on his home computer. On appeal, he argues that the images were on his computer as a consequence of an automatic "caching" function of the computer's web browser, that he did nothing more than view the images on a website, and that the evidence was therefore legally insufficient to prove that he "possessed" or "controlled" the images. The state does not contend that this legal argument is wrong under the law as it now exists. *See State v. Ritchie*, 349 Or 572, 248 P3d 405 (2011); *State v. Barger*, 349 Or 553, 247 P3d 309, *adh'd to as modified on recons*, 350 Or 233, 253 P3d 1030 (2011); *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (error is evaluated under the law at the time the appeal is decided). Rather, the state argues for affirmance on the ground that defendant did not preserve his claim of error at trial and, on appeal, does not ask us to engage in plain error review. We agree with defendant that, in light of *Barger* and *Ritchie*, both of which issued after trial in this case, defendant was erroneously convicted. We also reject the state's argument that we should not consider defendant's argument as plain error because he did not request us to do so. We therefore reverse.

A jury found defendant guilty of all charges, so we recite the facts in the light most favorable to the state. *State v. Johnson*, 342 Or 596, 598, 157 P3d 198 (2007), *cert den*, 552 US 1113 (2008). In July 2006, law enforcement agents interviewed defendant at his home after they received a tip that he was accessing child pornography on the Internet. Defendant told the agents that he "has a curiosity for nude children," "only looks at pornographic pictures of young children," and had visited a child pornography site that same day, but that he had never downloaded or transmitted the pictures. He agreed to release his computer to law enforcement officers for a forensic analysis of the computer's hard drive. Using file recovery software known as a "Forensic

---

[1] The statute has since been amended, but the amendments are not applicable to this case. Or Laws 2011, ch 515, §§ 4, 11.

Toolkit," or "FTK," a forensic examiner found sexually explicit images of children in the unallocated space of the hard drive. The examination further revealed that each of the images originally appeared on defendant's computer screen when defendant accessed a website by clicking on a link in an e-mail. When defendant accessed the site, his Internet browser created a copy of the webpage and stored it in a temporary Internet file cache on his hard drive. After defendant's browsing history was deleted (either by defendant or an automatic setting of his browser), the data nonetheless remained in the unallocated space of his hard drive.[2]

Defendant was charged with 101 counts of encouraging child sexual abuse in the second degree, each charge representing a different image found in the unallocated space of his hard drive. The charges, each in substantially the same language, alleged:

> "The said defendant, on or about July 19, 2006, in Tillamook County, State of Oregon, did unlawfully and knowingly and for the purpose of arousing and satisfying the sexual desires of defendant or another person, possess and control a digital image, to-wit: [Image Number], of sexually explicit conduct involving a child while being aware of and consciously disregarding the fact that creation of the visual recording of sexually explicit conduct involved child abuse * * *."

The state's theory at trial was that defendant, by accessing a website with images of child pornography, was able to "possess" and "control" each image not only by viewing it but also by doing "other things like print it out, save it, transfer it, transmit it." Although there was no evidence that defendant actually did anything with the images other than view them on the website, the prosecutor nonetheless elicited testimony from its forensic examiner regarding defendant's capability to do something more. The prosecutor first elicited testimony about the manner in which images from websites are automatically stored in a temporary Internet file cache and then asked the forensic examiner whether, in addition to being saved automatically, "it's something someone can choose to do[.]" The forensic

---

[2] For a description of the "caching" function, see *Barger*, 349 Or at 556-57.

examiner proceeded to explain that "[y]ou could save it to your hard disk. If you had like a little thumb drive or USB drive in your computer you could save it there. You could save it to a CD-ROM if you had a CD-ROM burner. Any place you could save digital data, you can save it."

At that point, defendant objected to the forensic examiner's testimony on the basis of relevance, and the parties discussed the objection outside the presence of the jury. Defendant argued that there was no evidence that he actually did anything other than view the images on his computer screen and that it was irrelevant whether he theoretically could have done something else with them. The state, for its part, argued that the evidence was relevant to the issue of control:

> "The fact that [defendant] didn't choose to save, didn't choose to print, didn't choose to e-mail this to somebody else doesn't negate the fact that he could. He had control of that. Once a digital image is on somebody's computer, they have control over it. And those are the options they can do. The fact that he didn't do any of those things does not negate the fact that he did have control over the image.
>
> "If you possess and control or—in legal jargon, *control* means you can do something with it. The fact that he did not exercise that does not negate the fact that he had that power, that ability."

(Emphasis in original.)

The trial court, at that point, agreed in substance with defendant's position regarding "control." The court explained:

> "I'll sustain the objection because as I read [ORS] 166.686(1)(a), you have to knowingly control. So the fact that it could be done, but wasn't done, doesn't tell me anything about whether this gentleman knew he could or didn't know. So I don't *** want to make a record where [defendant] gets convicted for something he did not do.
>
> "*****

"* * * And my sense of this is that someone should not be convicted of a crime for not doing something with something that's on his or her computer. I just don't—I understand your argument, but I think it's misplaced in my opinion.

"* * * * *

"* * * [I]f you want to talk about control, something—I think something needs to be done with the image, or whatever it is. And the fact that somebody might be able to do that is—I don't think that's enough to establish criminal liability."

The parties then discussed whether to provide a cautionary instruction to the jury to address potential prejudice from the testimony regarding defendant's ability to save the images (as opposed to simply viewing them). In the course of that colloquy, the court directly asked the prosecutor whether he intended to "present any other evidence that there was a download of some sort to a hard drive or other media[.]" The prosecutor said, "No." Based on that representation, the court instructed the jury, upon their return, "that you just heard testimony from this witness that links on a page can be saved to a hard drive or other media, and there is no evidence in this case that that was done."

During closing argument, the prosecutor returned to defendant's viewing of the images as well as the hypothetical but unexercised ability to do more than that. The prosecutor told the jury:

"The next part of that—item on our checklist, possessed a digital image. Well, we've talked quite a bit about the pictures, the images; we talked about these digital images one through 101. Both the State and the defense expert said that [defendant] had—could have viewed the digital images for 23 to 25 minutes.

"Additionally they were residing (indiscernible)—we saw his temporary Internet files, we saw they were also on his hard drive there as well.

"[The forensic examiner] talked about [defendant's] ability to control each one of those digital images. He controlled whether they could be printed, transmitted, saved, downloaded. He talked about saving and downloading

some—same thing. *The fact that [defendant] didn't do that doesn't negate the fact that he had control over whether that happened.* And interestingly enough he talked about, 'Well, hey, I didn't download it and I didn't print—or transmit it,' excuse me. So he knew he could, he knew he had control of it.

"* * * * *

"Also he [the court?] talked about possession[,[3]] control[,] actualizing dominion, [defendant's] viewing it, he's looking at it, you know, he has that."

The jury convicted defendant on all counts. The court merged the 101 guilty verdicts into a single conviction for second-degree encouraging child sexual abuse and sentenced defendant to supervised probation for 24 months, with conditions including the "sex offender package," ORS 137.540(2), and 90 days in jail.

Defendant now appeals that judgment of conviction, arguing that the evidence was, as a matter of law, insufficient to prove that he knowingly "possessed" or "controlled" the images of child pornography that he viewed on the Internet and that, consequently, resided in the unallocated space of his hard drive. Defendant claims to have raised that same argument below, directing us to portions of the transcript of his motion for a judgment of acquittal. Defendant then proceeds to explain why, under the Supreme Court's decisions in *Barger* and *Ritchie*, his conviction cannot stand.

The state's response is succinct: this court should affirm because the claim of error was not preserved. The state correctly points out that defendant's motion for a judgment of acquittal actually raised arguments that are entirely different from those that he now advances on appeal. In his motion for a judgment of acquittal, defendant argued that the state failed to prove that the children in the images were actual children (rather than manipulated images); that the images, which were of nude children but

---

[3] The jury had been instructed that the term "possess" includes "two types of possession; actual and constructive." The jurors were further instructed that a person has "actual possession" when "the person has physical dominion or control over it," and "constructive possession" when "the person does not have physical custody of the property but nevertheless either exercises control over it or has the right to exercise control over it."

did not involve sexual acts, were "lewd"; or that defendant possessed them for the purpose of sexual gratification. Defendant also contended that the statute he was charged with violating, ORS 163.686, was unconstitutional.[4] Any references to "control" or "possession" in defendant's motion for a judgment of acquittal were made only in passing; none of defendant's arguments touched on the question that defendant now raises on appeal regarding the state's proof that he "controlled" or "possessed" the images. *See, e.g., State v. Parker*, 231 Or App 445, 450, 220 P3d 110 (2009), *rev den*, 348 Or 281 (2010) (motion for judgment of acquittal regarding the state's failure of proof on one element does not preserve for appeal a purported failure of proof on a different element).

At oral argument, defendant's counsel clung to the position that the error was preserved, arguing that the questions of control and possession of the images "permeated" the trial. He then cited various pages of the transcript, portions of which are set out above, that concerned whether defendant had downloaded the images or had done anything more than view them. Those discussions between counsel and the court, however, occurred in the context of an evidentiary objection before the state had finished putting on its case. In that context, defendant did not argue that his act of viewing the images on the Internet was legally insufficient to prove that he possessed or controlled the images within the meaning of the statute; rather, he argued that the capability of doing more than viewing them was not relevant. In short, defendant never challenged the sufficiency of the state's proof of "control" or "possession" below, and the claim of error therefore is not preserved for appeal.

Because defendant failed to preserve the issue that he now raises, we will not consider that claimed error unless it qualifies as "plain error." *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, *provided that the appellate court may consider an*

---

[4] Defendant does not renew any of those arguments on appeal, and we express no opinion of their validity.

*error of law apparent on the record."* (Emphasis added.)). The state's brief is equally terse on that subject: "[D]efendant has not argued that this court should address his claim as one of plain error, and thus, this court should refuse to do so."

We ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so, and for good reason—it is incumbent upon the appellant to explain to us why an error satisfies the requisites of plain error and, further, why we should exercise our discretion to correct that error. *See, e.g., State v. Hammond,* 218 Or App 574, 583-84, 180 P3d 137 (2008) (not addressing the question of plain error where the "defendant does not argue that the matter in dispute satisfies the requisites of 'plain error' as prescribed in *State v. Brown,* 310 Or 347, 355-56, 800 P2d 259 (1990), and that substantial considerations militate in favor of the affirmative exercise of the discretion under *Ailes v. Portland Meadows, Inc.,* 312 Or 376, 381-83, 823 P2d 956 (1991), to consider and correct such error"); *see also State v. Bigelow,* 238 Or App 344, 348, 242 P3d 719 (2010), *rev den,* 350 Or 130 (2011) ("Defendant does not assert that the arguments she makes on appeal demonstrate errors of law that are reviewable as apparent on the face of the record. Accordingly, we do not address that issue."); *State v. Carr,* 215 Or App 306, 316, 170 P3d 563 (2007), *rev den,* 344 Or 109 (2008) (declining to address claim of error apparent on the face of the record where defendant first raised the issue in his reply brief and "even then * * * fail[ed] to address the factors governing the exercise of this court's discretion to review asserted plain error").

In this case, however, although defendant's brief does not contain the words "plain error" or citation to ORAP 5.45, defendant has nonetheless satisfied the requisites of ORAP 5.45 regarding a claim of error apparent on the record and has met his burden of demonstrating that type of error in his opening brief.[5] Under ORAP 5.45(4)(b), "a claimed error

---

[5] *Brown,* one of the seminal cases involving ORAP 5.45, involved a circumstance in which the appellant failed to assign error to the ruling at all, let alone develop an argument that the error qualified as error apparent on the record. 310 Or at 355. The court explained that ORAP 5.45 provides that "'the appellate court may consider errors of law apparent on the face of the record,' notwithstanding a defect

apparent on the record shall comply with the requirements for assignments of error generally by identifying the precise ruling, specifying the state of the proceedings when the ruling was made, and setting forth pertinent quotations of the record where the challenged ruling was made." Here, defendant has identified the ruling—the failure to enter a judgment of acquittal on all counts; specified the state of the proceedings (he made a motion for a judgment of acquittal, but not on the correct grounds); and set forth pertinent quotations not only where his motion for a judgment of acquittal was denied (again, on different grounds than those now argued by defendant) but also the portions of the record where the trial court considered the "control" question with regard to an evidentiary ruling, thereby demonstrating that the court was generally apprised of the issue, albeit in a different procedural context. More importantly, though, defendant complied with the requirement in ORAP 5.45(6) that his "argument in support of a claimed error apparent on the record shall demonstrate that the error is of the kind that may be addressed by the court without the claim of error having been preserved in the record"—in other words, he demonstrated that the argument satisfies the legal test for plain error.

An error is "apparent on the record" if (1) the error is one of law; (2) the legal point is "not reasonably in dispute"; and (3) to reach the error, "[w]e need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *Brown*, 310 Or at 355. Defendant's argument in his opening brief demonstrates that each of those requirements is satisfied here. As for the first and third requirements, defendant argues that the state's evidence that he viewed

---

in preservation at trial *or presentation on appeal*." 310 Or at 355 (emphasis added). The court also noted that "the purpose of an assignment of error was satisfied" because the state (the respondent) had "fully briefed the matter and set out verbatim the pertinent parts of the record" such that the court was not required to search the record. *Id.* at 356. ORAP 5.45 has since been amended to require that the appellant "comply with the requirements for assignments of error generally by identifying the precise ruling, specifying the state of the proceedings when the ruling was made, and setting forth pertinent quotations of the record where the challenged ruling was made," ORAP 5.45(4)(b); it also now requires the appellant's argument to "demonstrate that the error is of the kind that may be addressed by the court without the claim of error having been preserved in the record," ORAP 5.45(6).

child pornography on the Internet was legally insufficient to prove that he "controlled" or "possessed" those images for purposes of encouraging child sexual abuse in the second degree. That type of argument presents a question of law that we need not go outside the record to resolve. *See State v. Reynolds*, 250 Or App 516, 520, 280 P3d 1046 (2012) (so holding); *State v. Inloes*, 239 Or App 49, 243 P3d 862 (2010) (reviewing insufficiency of the evidence to support a conviction as error apparent on the record).

As for the second prong of the test, the Supreme Court's decisions in *Barger* and *Ritchie*, both issued after defendant was convicted, leave no reasonable dispute as to the adequacy of the state's proof. *See Jury*, 185 Or App at 136 (plain error is evaluated under the law at the time the appeal is decided). The state proceeded below on the theory that defendant "controlled" and "possessed" images that he viewed on the Internet and that were copied, as a function of his Internet browser, to his home computer. In *Barger*, the Supreme Court rejected that exact theory, holding,

> "[T]he statute before us, ORS 163.686(1)(a)(A)(i), when read in the light of its context (particularly ORS 163.686(1) (a)(A)(ii)), embodies a considered legislative choice not to criminalize the mere 'obtaining' or 'viewing' of child pornography without consideration. Thus, we conclude that the acts at issue here—navigating to a website and bringing the images that the site contains to a computer screen—are not acts that the legislature intended to criminalize."

349 Or at 567. In *Ritchie*, decided the same date as *Barger*, the court reiterated its rejection of "the state's central idea— that, to the extent that a digitalized image is displayed on a computer screen and, presumably, is viewed by the computer's user, the computer user 'possesses or controls' the image" for purposes of second-degree encouraging child sexual abuse. 349 Or at 584. In both cases, the court reversed the defendants' convictions notwithstanding digital copies of the images that were found in the unallocated space of the defendants' hard drives. *Ritchie*, 349 Or at 578-79; *Barger*, 349 Or at 556.[6] It is now plain, given those supervening

---

[6] Here, as in *Barger* and *Ritchie*, there is no evidence that defendant would have been aware of his browser's caching function or would have known how to go about accessing information stored in the temporary Internet file cache.

cases, that the evidence in this case—that defendant opened a link in an e-mail and viewed child pornography on the Internet—was legally insufficient to support guilty verdicts on any of the counts of second-degree encouraging child sexual abuse. Thus, because the briefing in this case demonstrates that the error is apparent on the record, we will consider it as such, notwithstanding defendant's failure to invoke explicitly the "plain error" doctrine.[7]

The remaining question is whether this court should exercise its discretion to correct the error. *See Ailes*, 312 Or at 381-82. The considerations relevant to that inquiry include

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Id.* at 382 n 6. We also consider whether defendant somehow encouraged the error, defendant made a strategic choice not to object, or the error could have been remedied if raised below. *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007). Here, it is evident from defendant's argument that all of the pertinent discretionary factors militate in favor of addressing his claim of error and reversing his conviction.

First and foremost, the error is grave. As we explained in *Reynolds*, the "entry of a criminal conviction without sufficient proof * * * is of constitutional magnitude." 250 Or App at 522. Defendant obviously has a significant interest in not being convicted of a crime that the state did not prove, while the state has no conceivable interest in upholding the erroneous conviction. *Id.* at 524 ("[W]e cannot fathom any reason why the state would have an interest in upholding the erroneous conviction.").

---

[7] Appellants are advised, of course, to address explicitly the subject of plain error. It is the rare case in which the error itself and the factors bearing on our discretion to review it will be so manifest that the briefing will demonstrate plain error without referring to it expressly.

Nor would correcting the error undermine any of the policies underlying the preservation requirement. For one, the law at the time that defendant was tried was decidedly against him; in 2009, we had endorsed the state's "constructive control" argument in our decision in *Ritchie*, concluding that "[a] person also exercises influence over a visual recording when a person discovers the presence of that recording on the Internet and causes that recording to appear on a specific computer monitor." 228 Or App 412, 419, 208 P3d 981 (2009). Thus, even if he had raised his present contentions below, he would not have prevailed on a motion for a judgment of acquittal under the extant case law.

Moreover, the record would not have developed any differently had defendant raised the issue in the trial court. We know that because of an objection that defendant did make—a relevance objection to the forensic examiner's testimony about defendant's capabilities of downloading or saving images to his hard drive or other media. As previously noted, in the context of that evidentiary objection, the court's curative instruction hinged on whether the state could offer any evidence that defendant did something other than click on a link, view the images on the website, and then clear his browsing history. The prosecutor represented, consistently with the testimony from the state's forensic examiner, that the state did not intend to offer any evidence that defendant downloaded or saved the files to other media. The state had every incentive in this case to offer evidence that defendant had done something more than view the images on a website, and we have no trouble concluding that the record was developed completely on the question whether defendant "possessed" or "controlled" the images.[8]

---

[8] The state did not address the question of plain error at all in its response brief, standing instead on the ground that defendant did not request plain error review. At oral argument, the state was asked for its position as to whether the error was, in fact, apparent on the record and responded only with an assertion that the record might have developed differently had the issue been raised below—specifically, that the state might have adduced evidence that could distinguish this case from *Richie* and *Barger*. For the reasons previously discussed, we find that contention to be wholly unpersuasive.

We are also satisfied, given the nature of the issues presented in defendant's opening brief, that the state has had an adequate opportunity on appeal to address the subject of plain error.

Lastly, it goes without saying that defendant, under the circumstances, had no plausible strategic reason for not raising, in addition to the other grounds in his motion for a judgment of acquittal, the insufficiency of the evidence as to "possession" or "control." This is not a circumstance in which defendant could be said to be lying in wait. He simply failed to advance an argument that, although contrary to then-existing case law, ultimately proved meritorious.

For the foregoing reasons, we conclude that this is an appropriate case in which to exercise our discretion to correct what is now, with the benefit of *Barger* and *Ritchie*, a plainly erroneous conviction for second-degree encouraging child sexual abuse. We therefore reverse.

Reversed.